## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PHILIP OLSON and
SHEILA OLSON,

          Plaintiffs,

    v.                                      1:11-cv-4446-WSD

CLARK EQUIPMENT COMPANY
et al.,

          Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Clark Equipment Company's Motion for Summary Judgment [35], Defendant Clark Equipment Company's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Jeffery Warren [39] ("Motion to Exclude Expert"), and the parties' Joint Stipulation of Dismissal with Prejudice as to Certain Claims Only [48] ("Stipulation of Dismissal").  Also before the Court are Defendant Clark Equipment Company's Request for Oral Argument on Its Motion for Summary Judgment [36] and Request for Oral Argument on Its Motion to Exclude the Testimony of Plaintiffs' Expert Witness Jeffery Warren [40] (collectively, "Motions for Hearing").

## I.    BACKGROUND

This is a personal injury action brought by Plaintiffs Philip Olson ("Mr. Olson") and Sheila Olson ("Mrs. Olson") (collectively, "Plaintiffs") arising from an accident that occurred while Mr. Olson was operating a Bobcat MT52 Mini Track Loader (the "Loader"), manufactured by Defendant Clark Equipment Company ("Defendant").[1]

A.    Relevant Facts

1.    *The Loader and the Reverse Stop Panel*

In June 2005, Mr. Olson purchased the Loader, manufactured by Defendant, for use in his stump grinding business.  (Def.'s SUMF [35-43] ¶¶ 1, 14, 17.)  The Loader is a tracked tool carrier.  (Id. ¶ 1.)  To operate the Loader, the user walks behind the Loader, using his left hand to operate the driving and steering control and using his right hand to control the lift bucket or other attachment.  (Id.)

The rear of the Loader is equipped with a large, curved metal panel (the "Reverse Stop Panel").  (Id.)  The Reverse Stop Panel is designed to stop the Loader from moving backward when the Panel is depressed, by triggering a counter force returning the driving control mechanism to the neutral position.  (Id.

---

[1] The Complaint names "Clark Equipment Company" and "Clark Equipment Company d/b/a Bobcat Company" as separate defendants.  The parties agree that these are the same entity.

¶ 3.)  The Reverse Stop Panel engages when approximately twice the force applied by the operator's hand to the driving control mechanism, is applied to the Panel. (Id. ¶ 5.)[2]  No regulations or industry standards require the Loader to have the Reverse Stop Panel, and at the time the Loader was developed in 2002, only one competing product featured a mechanism similar to the Reverse Stop Panel.  (Id. ¶¶ 9–10.)

On the Loader, above the instrument panel, is a warning decal that states, "WARNING – AVOID INJURY OR DEATH – When backing up, look behind in the direction of travel."  (Id. ¶ 11.)  Next to this warning is a picture of an operator being trapped between the Loader and a wall.  (Id. ¶ 12.)

2.    *The Accident*

On November 20, 2009, Mr. Olson was using the Loader at a residential job site to move wood chips.  (Id. ¶ 19.)  After picking up a load, Mr. Olson began backing up the Loader, walking backward with the Loader.  (Id. ¶ 22.)  Without looking behind him, Mr. Olson backed into a garage wall, and his leg was pinned

---

[2] In their response to paragraph 5 of Defendant's Statement of Undisputed Material Facts, Plaintiffs make several statements regarding the functioning of the Reverse Stop Panel.  (See Pls.' Resp. SUMF [41-24] ¶ 2.)  Plaintiffs do not dispute that the Reverse Stop Panel engages upon the application of twice the force being applied to the driving control mechanism, and the Court accepts this statement as an undisputed fact.  See LR 56.1(B)(2)(a)(2), NDGa.

between the Loader and the garage.  (Id. ¶¶ 22, 26.)[3]  Mr. Olson suffered a

fractured right femur.  (Id. ¶ 23.)

Prior to the accident, Mr. Olson had operated the Loader approximately

1,000 times.  (Id. ¶ 18.)  He tested the operation of the Reverse Stop Panel

approximately once per month and always found that the Reverse Stop Panel

functioned properly.  (Id. ¶¶ 32–33.)  He had read, and understood, the warnings on

the Loader's instrument panel, including the warning to always look in the

direction of travel.  (Id. ¶¶ 28–29.)  Mr. Olson testified that he fully understood that

failure to look in the direction of travel could result in injury and that, if he had

seen the garage just before the accident, he could have stopped the Loader.  (Id.

¶¶ 27, 29.)

B.    Procedural History

On November 10, 2011, Plaintiffs filed this action in the State Court of

Fulton County, Georgia.  In their Complaint [1-1], Plaintiffs assert causes of action

against Defendant in five (5) counts: breach of implied warranty (Count I); strict

product liability and negligence based on a manufacturing defect and a design

defect (Count II); failure to warn and negligent misrepresentation (Count III); loss

---

[3] Plaintiffs argue that the Reverse Stop Panel failed to engage.  (See Pls.' SAMF
[41-23] ¶ 5.)  Plaintiffs, however, do not cite to any testimony or other evidence to
support this contention.

of consortium (Count IV); and a claim for punitive damages (Count V).[4]  On

December 21, 2011, Defendant removed the action to this Court.

On April 10, 2012, Plaintiffs designated Jeffrey H. Warren, Ph.D.

("Warren"), a professional engineer, as their expert to "testify generally that [Mr.

Olson's] injury was the result of one or more unreasonably defective conditions in

the [Loader]."  (Pls.' Expert Discl. [15].)  Plaintiffs did not designate any other

experts.  On September 11, 2012, Defendant filed its Motion to Exclude the

opinions of Warren on the ground that Warren is not qualified to give the opinions

he seeks to offer and that the opinions are not relevant.

On September 10, 2012, Defendant filed its Motion for Summary Judgment

on the grounds that, absent the testimony of Warren, Plaintiffs lack sufficient

---

[4] The Complaint also names as defendants Doosan Infracore America Corporation
("Doosan") and "John Doe Companies 1-5."  Doosan was dismissed from this
action in the state court.  (See Not. Removal [1] ¶ 2.)  "John Doe Companies 1-5"
are described only as entities "whose identities are unknown to Plaintiffs" and who
"are engaged in the design, manufacture, distribution and sale of the [Loader]."
(Compl. [1-1] ¶ 5.)  "As a general matter, fictitious-party pleading is not permitted
in federal court."   Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).
While courts have made exceptions when the plaintiff specifically describes an
individual without stating his or her name precisely or correctly, Plaintiffs here
have not provided any description of the Doe Defendants in this case.  See id.
("We have created a limited exception to this rule when the plaintiff's description
of the defendant is so specific as to be 'at the very worst, surplusage.'" (quoting
Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).  The Doe Defendants
are required to be dismissed.

evidence to support their claims and that the record establishes that Mr. Olson assumed the risk of his injuries.[5]

On October 1, 2012, the parties submitted their joint Stipulation of Dismissal in which they stipulate that the following claims (the "Undisputed Claims") are voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure: the warranty claims in Count I, the manufacturing defect claims in Count II, the failure to warn claims in Count III, and the punitive damages claims in Count V. The parties state that the remaining claims—the design defect claims in Count II, the misrepresentation claims in Count III, and the loss of consortium claim in Count IV—remain pending, and they are the subject of Defendant's Motion for Summary Judgment.

## II.    STIPULATION OF DISMISSAL

In their Stipulation of Dismissal, the parties stipulate that the Undisputed Claims—the warranty claims in Count I, the manufacturing defect claims in Count II, the failure to warn claims in Count III, and the punitive damages claims in Count V—are voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of

---

[5] On September 10 and 11, 2013, Defendants filed their Motions for Hearing seeking a hearing on the Motion to Exclude Expert and the Motion for Summary Judgment. Local Rule 7.1E provides that motions "will be decided by the court without oral hearing, unless a hearing is ordered by the court." The Court determines that a hearing is not necessary, and the Motions for Hearing are denied.

Civil Procedure.  Rule 41(a) provides that, after a defendant has filed an answer, "the plaintiff may dismiss an *action* without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A) (emphasis added).  Courts uniformly have held that Rule 41(a) does not permit the dismissal of individual claims from a multi-claim action but only authorizes the dismissal of an entire action.  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413–14 & n.13 (3d ed. 2008 & Supp. 2012) (collecting cases) ("Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action."); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) (holding that a district court is "not empowered to dismiss only certain claims under Rule 41"); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979)[6] (holding that Rule 41(a) allows the dismissal of an "action," not "the separate claims which make up an action").  The proper way for a plaintiff to remove a single claim is to move to amend the complaint under Rule 15.  See, e.g., 9 Wright & Miller, supra, § 2362, at 413–14.

Because the Stipulation of Dismissal attempts to dismiss only certain claims in the Complaint, and not Plaintiffs' entire action, the Stipulation of Dismissal is

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

not effective under Rule 41(a).  <u>See</u> Fed. R. Civ. P. 41(a)(1)(A); <u>Klay</u>, 376 F.3d at

1106.  The Court, however, construes the Stipulation of Dismissal as an unopposed

motion, under Rule 15, to amend Plaintiffs' pleadings to remove the Undisputed

Claims.  <u>See, e.g.</u>, <u>Anderberg v. Masonite Corp.</u>, 176 F.R.D. 682, 686 (N.D. Ga.

1997) ("When a party seeks to dismiss a single claim in a multi-count complaint

instead of an entire action, . . . the motion should be treated as a motion to amend

the complaint under Rule 15(a) to delete the specific claim.").  Because all of the

parties consent to the removal of the Undisputed Claims from this action, the Court

grants the dismissal of the Undisputed Claims under Rule 15(a).[7]  <u>See</u> Fed. R. Civ.

P. 15(a)(2) (providing that "a party may amend its pleading . . . with the opposing

party's written consent").

## III.   MOTION TO EXCLUDE EXPERT

### A.   <u>Legal Standard</u>

The admissibility of expert opinions is governed by Rule 702 of the Federal

Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,

---

[7] Because of the parties' mutual consent and because amendment removing the
Undisputed Claims does not impose any burden on the parties, the Court further
finds that Rule 16, requiring good cause to amend a complaint after the time set in
the case schedule, is satisfied.  <u>See</u> Fed. R. Civ. P. 16(b)(4).

> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

Fed. R. Evid. 702.  The proponent of expert testimony must establish, by a

preponderance of the evidence, the factors contained in Rule 702.  United States v.

Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

The standard of admissibility in Rule 702 was discussed in the Supreme

Court's seminal decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993).  Under Daubert,

> Expert testimony may be admitted into evidence if: (1) the expert is
> qualified to testify competently regarding the matters he intends to
> address; (2) the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by the sort of inquiry
> mandated in Daubert; and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or specialized
> expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562–63 (11th Cir. 1998)

(footnote omitted) (citing Fed. R. Evid. 702; Daubert, 509 U.S. at 589).  Daubert

enumerated several factors which may be used in assessing expert testimony,

including (1) whether a theory or technique applied by the expert can be or has

been tested, (2) whether the theory has been subjected to peer review and

publication, (3) in the case of a particular scientific technique, the Court should

consider the known or potential rate of error, (4) and whether the theory or technique has gained general acceptance in the relevant community. 509 U.S. at 593–94. The Supreme Court emphasized that the Rule 702 inquiry is a flexible one. Id. at 594.

Daubert focused on the admissibility of scientific expert testimony. In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court held Daubert's methodology applies equally to experts who are not scientists. The Court held that a trial court may consider one or more of the specific factors mentioned in Daubert in assessing non-scientific expert testimony, but that the trial court retains discretion to decide if non-scientific testimony is reliable and relevant to the case. Kumho Tire, 526 U.S. at 141. The Court must

> make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field . . . . [T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony.

Id. at 152.

B.    Analysis

Plaintiffs retained Warren, a professional engineer, to "testify generally that

[Mr. Olson's] injury was the result of one or more unreasonably defective conditions in the [Loader]."  (See Pls.' Expert Disclosure [15].)  Plaintiffs contend that Warren has two relevant expert opinions to offer in this matter: (1) that Mr. Olson's "leg was broken because the reverse stop panel failed to stop the backward movement of the [Loader]" and (2) that the Loader's Reverse Stop Panel is a "useless safety device" and constitutes a design defect.[8]  (See Pls.' Resp. Def.'s Mot. Exclude Expert [55] at 10 (citing Warren Report [15-1] at 5–6; Dep. J. Warren [34] at 59, 93).)  In its Motion to Exclude Expert, Defendant seeks the exclusion of these opinions because Warren is not qualified to give an opinion on the cause of Mr. Olson's medical injury and Warren's opinion on the effectiveness of the Reverse Stop Panel is not relevant.[9]

---

[8] In their opposition to the Motion to Exclude Expert, submitted before the parties filed their Stipulation of Dismissal, Plaintiffs also identified a third opinion as relevant: that the Loader's operator manual was "erroneous and misleading."  (See Pls.' Resp. Def.'s Mot. Exclude Expert [55] at 12 (citing Dep. J. Warren [34] at 157–60).)  As discussed above, Plaintiffs now have voluntarily abandoned their failure-to-warn claims.  Plaintiffs have not explained how Warren's opinion regarding the manual is relevant to their remaining product defect claims—the only claims for which Plaintiffs designated Warren.  (See Pls.' Expert Disclosure [15].)  The Court thus considers Warren's opinion regarding the manual as withdrawn.

[9] Defendant identifies, and seeks to exclude, several additional opinions it states might be inferred from Warren's report and deposition testimony.  Because Plaintiffs responded by identifying only the opinions discussed above, the Court finds that Plaintiffs do not intend to introduce or rely on any additional opinions, and any additional opinions are thus excluded.

1.    *Medical Causation*

Defendant first seeks to exclude Warren's opinion that the Loader's failure to stop caused Mr. Olson's broken leg because Warren is not qualified to offer medical causation opinions.  Plaintiffs did not oppose, or otherwise respond to, this argument.  The Court thus considers Plaintiffs to have withdrawn their reliance on Warren's causation opinion, and the opinion is excluded.  See St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Sch., 679 F. Supp. 2d 1320, 1334–35 (N.D. Ga. 2009) (citing Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D.Ga.1997)) ("Failure to respond to an opposing party's arguments regarding a claim constitutes abandonment of that claim, and warrants dismissal of the abandoned claim."); see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  The Court further notes that neither Warren's report nor Plaintiffs' submissions show that Warren is qualified to offer an opinion on medical causation, and for this additional reason, Warren's causation opinion is required to be excluded.  See Frazier, 387 F.3d at 1260 ("The proponent of expert testimony always bears 'the burden to show that his expert is qualified to testify competently regarding the matters he intend[s] to address . . . .'"

(quoting <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1257 (11th Cir. 2002))).

2.    <em>Reverse Stop Panel and Design Defect</em>

Defendant next seeks to exclude Warren's opinion that the Reverse Stop Panel is a "useless safety device" that renders the Loader defective.  Defendant argues that Warren's opinion on the effectiveness of the Reverse Stop Panel is not relevant to, and thus does not support, Warren's conclusion that the Loader is defective because Warren failed to evaluate the Loader, as a whole, under a risk-utility analysis.

In this action, Plaintiffs allege that the Loader was defectively designed. Under Georgia law, the determination of whether a product is defectively designed requires the application of a balancing test in which "the risks inherent in a product design are weighed against the utility or benefit derived from the product."  <u>Banks v. ICI Americas, Inc.</u>, 450 S.E.2d 671, 673 (Ga. 1994).  "This risk-utility analysis incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to

eliminate the risk."  Id.; see also Jones v. Nordictrack, Inc., 268 F.3d 1292, 1293 (11th Cir. 2001) (per curiam).

In his evaluation, Warren tested the functionality of the Reverse Stop Panel and concluded that, because the device does not stop the Loader unless the operator releases the drive control, the Reverse Stop Panel is a "useless safety device."  Based solely on this conclusion on the effectiveness of the Reverse Stop Panel, Warren states that the Loader itself is defectively designed.

Even if the Court accepts the conclusion that the Reverse Stop Panel is "useless,"[10] Warren does not offer any explanation of how that renders the Loader itself defective.  Warren did not engage in any analysis to determine whether the incorporation of a *useful* substitute for the Reverse Stop Panel would be reasonable.  In other words, Warren did not engage in a risk-utility analysis of the Loader.  Accordingly, his opinions on the effectiveness of the Reserve Stop Panel and the defectiveness of the Loader are not relevant under Georgia law and are required to be excluded.  See, e.g., Perez-Hernandez v. Mitsubishi Motors Corp.,

---

[10] The facts are undisputed that when the force applied to the Reverse Stop Panel is twice the force applied by the operator's hand to the driving control mechanism, the panel engages.  These facts alone discredit Warren's conclusion and flippant opinion that the Reverse Stop Panel is "useless."  The Court notes that Mr. Olson habitually checked the Reverse Stop Panel to assure it was functioning, supporting that Mr. Olson did not consider the Panel useless.

No. 1:03-cv-1269-WSD, 2005 WL 6032881, at *1–3 (N.D. Ga. May 10, 2005) (excluding as not relevant expert's opinion that vehicle was defective because expert failed to engage in risk-utility analysis).

## IV.   MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties

15

"need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Analysis

In its Motion for Summary Judgment, Defendant seeks summary judgment on Plaintiffs' remaining claims: the design defect claim alleged in Count II of the Complaint, the misrepresentation claim alleged in Count III, and the loss of

consortium claim alleged in Count IV.[11]

      1.   *Design Defect (Count II)*

As discussed above, the opinions of Warren, Plaintiffs' only designated expert, are excluded.  Defendant seeks summary judgment on Plaintiffs' design defect claim on the ground that, in the absence of Warren's testimony, Plaintiffs lack sufficient evidence to show that the Loader has a design defect.  Plaintiffs contend that expert testimony is not necessary to show a design defect in a product liability action, and they argue that Mr. Olson's testimony describing how the accident occurred is sufficient to show that the Loader was defectively designed.

In determining if a product is defectively designed, a balancing test is used in which "the risks inherent in a product design are weighed against the utility or benefit derived from the product."  Banks v. ICI Americas, Inc., 450 S.E.2d 671, 673 (Ga. 1994).  "This risk-utility analysis incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk."  Id.  Relevant

---

[11] Defendant also seeks summary judgment on the Undisputed Claims.  Because the Undisputed Claims have been dismissed, the Motion for Summary Judgment is denied as moot as to these claims.

factors in the risk-utility analysis include: (1) the availability of an alternative safer design, (2) cost trade-offs, (3) tactical market decisions, (4) product development, (5) research/testing demands (technological feasibility), (6) varying corporate management styles, and (7) regulatory restrictions.  Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1361–62 (N.D. Ga. 1999) (citing Banks, 450 S.E.2d at 675 n.6).

Plaintiff is correct that expert testimony is not always necessary to establish a design defect under the factors enunciated in Banks.  See Mize v. HJC Corp., No. 1:03-cv-2397-JEC, 2006 WL 2639477, at *4 (N.D. Ga. Sept. 13, 2006) (citing S K Hand Tool Corp. v. Lowman, 479 S.E.2d 103, 107 (Ga. Ct. App. 1996)).  "As a practical matter, however, expert testimony is often required to measure the 'gravity and severity of the danger' posed by a product, the likelihood of that danger, and whether there are feasible alternative designs that would eliminate the danger 'without impairing the usefulness of the product or making it too expensive.'"  Id. (quoting Banks, 450 S.E.2d at 675).  "In other words, expert testimony is frequently necessary to apply the Banks factors."  Id.

Regardless of whether an expert is necessary here, Plaintiffs have not presented any evidence on the Banks risk-utility factors to support a finding that the Loader is defective.  Plaintiffs point only to Mr. Olson's testimony of how the accident occurred, and that Mr. Olson was in the correct position at the time of the

accident.  The mere occurence of the accident is not evidence that the Loader was

defective.  See, e.g., Udoinyion v. Michelin N. Am., Inc., 721 S.E.2d 190, 194 (Ga.

Ct. App. 2011); Miller v. Ford Motor Co., 653 S.E.2d 82, 84 (Ga. Ct. App. 2007).

To show a design defect, Plaintiffs must at least present some evidence on the risk-

utility factors.  See Banks, 450 S.E.2d at 673; see also Cochran v. Brinkmann

Corp., No. 1:08-cv-1790-WSD, 2009 WL 4823854, at *5–6 (N.D. Ga. Dec. 9,

2009) (granting summary judgment to defendant on design defect claim where

plaintiff failed to present any evidence on the Banks risk-utility factors).  Because

Plaintiffs have not done so, Defendant is entitled to summary judgment on

Plaintiff's design defect claim.[12]

---

[12] Defendant also argues that it is entitled to summary judgment on Plaintiffs'
design defect claim because Plaintiffs lack expert evidence of medical causation.
Plaintiffs concede that expert testimony is required to establish medical causation.
See, e.g., Wilson v. TASER Int'l, Inc., 303 F. App'x 708, 715 (11th Cir. 2008) ("In
product liability cases, proof of causation generally requires reliable expert
testimony which is 'based, at the least, on the determination that there was a
reasonable probability that the negligence caused the injury.'" (quoting Rodrigues
v. Ga.-Pac. Corp., 661 S.E.2d 141, 143 (Ga. Ct. App. 2008))).  Plaintiffs appear to
contend that they do not need to proffer expert testimony because "there does not
appear to be any dispute in this case as to the medical cause of Mr. Olson's injury."
(Pls.' Resp. Mot. Summ. J. [41] at 11.)  Defendant, in fact, has disputed causation
as shown by its argument that it is entitled to summary judgment because of the
lack of causation evidence.  Specifically, the record does not establish that Mr.
Olson's alleged injury was caused by the Loader rather than some other force.
Plaintiffs have thus failed to meet their burden to produce medical causation
evidence.  See McGee v. Sentinel Offender Servs., LLC, No. 11-14077, 2013 WL
2436658, at *4 (11th Cir. June 6, 2013) (publication pending) ("If the moving

2.    *Misrepresentation (Count III)*

Defendant next moves for summary judgment on Plaintiffs' negligent misrepresentation claim.  Under Georgia law, negligent misrepresentation has three elements: (1) the negligent supply of false information by the defendant; (2) reasonable reliance by the plaintiff; and (3) damages.  Home Depot U.S.A., Inc. v. Wabash Nat'l Corp., 724 S.E.2d 53, 60 (Ga. Ct. App. 2012).  In their Complaint, Plaintiffs allege that Mr. Olson relied on, and was injured by, two statements in the Loader's operator manual regarding the Reverse Stop Panel:

> (a)    "The reverse stop panel will stop the machine from moving backward when the panel is pushed forward" and

> (b)    "When the reverse stop panel is fully pressed, the machine will move forward slowly."

(Compl. [1-1] ¶ 30.)

Plaintiffs have not submitted any evidence showing that these two statements are false.  Plaintiffs' expert Warren testified that, based on his testing of

---

party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present 'additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" (quoting Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir.1993))).  For this additional reason, Defendant is entitled to summary judgment on Plaintiffs' design defect claim.

the Loader, the statements are literally true.  (See Dep. J. Warren [34] at 157–59.)[13]

Defendant is thus entitled to summary judgment on Plaintiffs' misrepresentation claim.[14]

### 3.    *Loss of Consortium (Count IV)*

Plaintiffs' loss of consortium claim, asserted on behalf of Mrs. Olson, is a derivative claim under Georgia law and is barred where summary judgment is granted on the main claims.  See Briddle v. Cornerstone Lodge of Am., 654 S.E.2d 188, 189 (Ga. Ct. App. 2007); White v. Hubbard, 416 S.E.2d 568, 569–70 (Ga. Ct.

---

[13] Warren testified that he believes the statements are misleading because the Reverse Stop Panel will not engage unless the operator releases the drive control. (See Dep. J. Warren [34] at 157–59.)  Based on this testimony, Plaintiffs argue that the operator manual constitutes a negligent omission.  The Court does not consider this argument because Plaintiffs did not allege a manual omission in their Complaint.  See Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (explaining that a plaintiff may not raise a new claim to escape summary judgment on the claims that he actually pleaded).  Even if the Court considered this argument, Defendant would be entitled to summary judgment because Plaintiffs have not submitted any evidence showing that Mr. Olson, who had used the Loader over 1,000 times and successfully tested the Reverse Stop Panel once a month, was unaware of the need to release the drive control for the Reverse Stop Panel to engage.

[14] The Court further finds that the record does not contain evidence that Mr. Olson relied on the alleged misrepresentations in the operator manual.  To show reliance, Plaintiffs cite only testimony by Mr. Olson that he believed the Reverse Stop Panel would prevent him from being pinned to a building.  (See Pls.' Ex. 19 [41-19].)  This testimony does not show that Mr. Olson even read the operator manual, let alone that he relied on it at the time of the accident.  For this additional reason, Defendant is entitled to summary judgment on Plaintiffs' misrepresentation claim.

App. 1992).  Accordingly, because the Court grants Defendant summary judgment on all other claims, Defendant is entitled to summary judgment on the loss of consortium claim.[15]

## V.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the parties' Joint Stipulation of Dismissal with Prejudice as to Certain Claims Only [48], construed as a motion for leave to amend the Complaint to remove certain claims, is **GRANTED**.  Plaintiffs' warranty claims in Count I of the Complaint, manufacturing defect claims in Count II, failure to warn claims in Count III, and punitive damages claims in Count V are **DISMISSED** pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendant Clark Equipment Company's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Jeffery Warren [39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Clark Equipment Company's Motion for Summary Judgment [35] is **GRANTED IN PART** and **DENIED AS**

---

[15] Because the Court concludes that Defendant is entitled to summary judgment based on the lack of evidence sufficient to establish Plaintiffs' claims, the Court does not reach Defendant's alternative argument that it should be granted summary judgment on the ground that Mr. Olson "assumed the risk" of his injuries.

**MOOT IN PART**.  It is **GRANTED** with respect to Plaintiffs' design defect claim alleged in Count II of the Complaint, Plaintiffs' misrepresentation claim alleged in Count III, and Plaintiffs' loss of consortium claim alleged in Count IV. It is **DENIED AS MOOT** with respect to the remaining claims.

**IT IS FURTHER ORDERED** that Defendant Clark Equipment Company's Request for Oral Argument on Its Motion for Summary Judgment [36] and Request for Oral Argument on Its Motion to Exclude the Testimony of Plaintiffs' Expert Witness Jeffery Warren [40] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against "John Doe Companies 1-5" are **DISMISSED**.

**SO ORDERED** this 8th day of July, 2013.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE